AO 108 (Rev. 06/09, modified by USAO-DC)  Application for a Warrant to Seize Property Subject to Forfeiture by Telephone

# UNITED STATES DISTRICT COURT

### for the

### District of Columbia

| | | |
|---|---|---|
| In the Matter of the Seizure of | ) | |
| *(Briefly describe the property to be seized)* | ) | |
| | ) | Case No. 21-sz-17 |
| ONE DOMAIN NAME CONTROLLED BY VERISIGN FOR INVESTIGATION OF VIOLATIONS OF 18 U.S.C. § 1343 | ) | |
| | ) | |

### APPLICATION FOR A WARRANT
### TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the jurisdiction of the District of Columbia is subject to forfeiture to the United States of America under 18 U.S.C. § 1029(c)(1)(C); 18 U.S.C. § 1030(i)(1) and (j); 18 U.S.C. § 981(b); 18 U.S.C. 982(a)(1); and 28 U.S.C. 1651 *(describe the property)*:

SEE ATTACHMENT A, HEREBY INCORPORATED BY REFERENCE.

The application is based on these facts:

SEE ATTACHED AFFIDAVIT, HEREBY INCORPORATED  BY REFERENCE.

❑ Continued on the attached sheet.

_____
*Applicant's signature*

FBI Special Agent Christopher Rizzo
_____
*Printed name and title*

Attested to by the applicant in according with the requirements of Fed. R. Crim. P. 4.1 and 41(d)(3) by telephone.

Date: _____06/09/2021_____

_____
*Judge's signature*

City and state:   District of Columbia

U.S. Magistrate Judge Zia M. Faruqui
_____
*Printed name and title*

AO 109 (Rev. 12/09, modified by USAO-DC)  Warrant to Seize Property Subject to Forfeiture by Telephone

# UNITED STATES DISTRICT COURT
### for the
### District of Columbia

| | |
|---|---|
| In the Matter of the Seizure of<br>*(Briefly describe the property to be seized)*<br><br>ONE DOMAIN NAME CONTROLLED BY VERISIGN FOR<br>INVESTIGATION OF VIOLATIONS OF 18 U.S.C. § 1343 | )<br>)<br>)     Case No. 21-sz-17<br>)<br>) |

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE BY TELEPHONE

To:  Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests that certain property located in the jurisdiction of the District of Columbia be seized as being subject to forfeiture to the United States of America.  The property is described as follows:

ONE DOMAIN NAME THAT IS STORED AT PREMISES CONTROLLED BY VERISIGN INC., AS FURTHER DESCRIBED IN ATTACHMENT A, HEREBY INCORPORATED BY REFERENCE.

I find that the affidavit(s) and any recorded testimony establish probable cause to seize the property.

**YOU ARE COMMANDED** to execute this warrant and seize the property on or before    06/23/2021    
*(not to exceed 14 days)*

❏ in the daytime – 6:00 a.m. to 10:00 p.m.        ☑ at any time in the day or night, as I find reasonable cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to United States Magistrate Judge   Zia M. Faruqui                                                                    .
*(name)*

❏ I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*   ❏ for _____ days *(not to exceed 30).*

❏ until, the facts justifying, the later specific date of _____ .

Date and time issued:    06/09/2021                              _____
*Judge's signature*

City and state:    District of Columbia                      Honorable Zia M. Faruqui, U.S. Magistrate Judge
                                                                                        *Printed name and title*

AO 109 (Rev. 12/09)  Warrant to Seize Property Subject to Forfeiture (Page 2)

| Return | | |
|---|---|---|
| Case No.:  21-sz-17 | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of: |
|---|
|  |

| Inventory of the property taken: |
|---|
|  |

| Certification |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

**Property to Be Seized**

This warrant applies to the domain name **slilpp.net**, which is stored at premises owned, maintained, controlled, or operated by Verisign Inc., an electronic communications service and remote computing service provider which accepts service at 12061 Bluemont Way, Reston, Virginia.

## ATTACHMENT B

IT IS ORDERED that, Verisign Inc. ("PROVIDER"), which is the provider for the property listed in Attachment A (the "SUBJECT DOMAIN NAME"), shall take the following actions to effect seizure of the property identified in Attachment A:

1. Take all reasonable measures to redirect the domain names to substitute servers at the direction of the Federal Bureau of Investigation, by associating the SUBJECT DOMAIN NAME to the following authoritative name-server(s):

    a. ns1.seizedservers.com; and/or

    b. ns2.seizedservers.com; and/or

    c. Any new authoritative name server or IP address to be designated by a law enforcement agent in writing, including e-mail, to the PROVIDER.

2. Prevent any further modification to, or transfer of, SUBJECT DOMAIN NAME pending transfer of all right, title, and interest in SUBJECT DOMAIN NAME to the United States upon completion of forfeiture proceedings, to ensure that changes to the SUBJECT DOMAIN NAME cannot be made absent court order or, if forfeited to the United States, without prior consultation with the Federal Bureau of Investigation.

3. Take all reasonable measures to propagate the necessary changes through the Domain Name System as quickly as practicable.

4. Provide reasonable assistance in implementing the Terms of this Order and take no unreasonable action to frustrate the implementation of this Order.

5. The Government will display a notice on the website to which the SUBJECT DOMAIN NAME will resolve. That notice will consist of law enforcement emblems and the following text (or substantially similar text):

    "The domain for slilpp.net has been seized by the Federal Bureau of Investigation in accordance with a seizure warrant issued pursuant to 18 U.S.C. §§ 981, 982, 1029, and 1030 by the United States District Court for the District of Columbia as part of a law enforcement action by the Federal Bureau of Investigation."

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| IN THE MATTER OF THE SEIZURE OF ONE DOMAIN NAME CONTROLLED BY VERISIGN FOR INVESTIGATION OF VIOLATIONS OF 18 U.S.C. § 1343 | Case No. 21-sz-17<br><br>**Filed Under Seal** |

*Reference: USAO Ref. # 2016R00982; Subject Domain Name: slilpp.net*

**AFFIDAVIT IN SUPPORT OF**
**AN APPLICATION FOR A SEIZURE WARRANT**

I, Special Agent Christopher Rizzo, being first duly sworn, hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1.     I make this affidavit in support of an application for a seizure warrant for one domain name which is listed in Attachment A, that is, **slilpp.net**, which is stored at premises owned, maintained, controlled, or operated by Verisign Inc. ("VERISIGN" or "PROVIDER"), an electronic communications service and remote computing service provider which accepts process at 12061 Bluemont Way, Reston, Virginia.

2.     I am a Supervisory Special Agent of the Federal Bureau of Investigation ("FBI") assigned to the Global Operations and Targeting Unit at FBI Headquarters Cyber Division, and have been employed by the FBI since approximately August 2009. I am currently assigned to a headquarters unit that is designed to provide investigative support to field office investigations. As such, I have participated in numerous investigations involving computer and high technology related crimes including computer intrusions, internet fraud, credit card fraud, and bank fraud. Throughout my FBI employment, I have received training in general law enforcement and in specialized areas including computer crimes. As a Special Agent of the FBI, I am authorized to

1

investigate crimes involving computer intrusions and other financial crimes stated under federal law, including Title 18 of the United States Code.

3.      The facts in this affidavit are based on my personal observations, my training and experience, information obtained from other agents and witnesses, and information provided by, or published by, respected cybersecurity professionals.  This affidavit does not set forth all of my knowledge about this matter, or all of the evidence known to the FBI.  It is merely intended to show that there is sufficient probable cause for the requested warrant.

4.      I make this affidavit in support of the application for a seizure warrant for the account(s) described in Attachment A ("Target Properties").[1]  I respectfully submit that there is probable cause to believe that multiple subjects have committed violations of 18 U.S.C. §§ 1343 (wire fraud), 1344 (bank fraud), 1028 (identity theft), 1028A (aggravated identity theft), 1029 (access device fraud), 1030(a)(4) (obtaining unauthorized access to protected computers for the purpose of furthering fraud), and 18 U.S.C. § 1956(a)(2)(A) (promotional international money laundering).  I further submit that there is probable cause to believe that the Target Properties are subject to seizure and forfeiture: (1) pursuant to 18 U.S.C. § 1029(c)(1)(C), as personal property that was used, or intended to be used, to commit or to facilitate the commission of a § 1029 violation; (2) pursuant to 18 U.S.C. § 1030(j) and (i)(1), as personal property that was used, or intended to be used, to commit or to facilitate the commission of a § 1030 violation; and (3)

---

[1] This affidavit is submitted in support of one of three related applications for seizure warrants, including warrants directed to Verisign, Inc. (Case No. 21-sz-17), one directed to Public Interest Registry (Case No. 21-sz-18), and one directed to Neustar (Case No. 21-sz-19).  The probable cause statement is identical for each of the affidavits submitted in support of these related applications.

pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 982(a)(1), as personal property involved in a violation of 18 U.S.C. § 1956.

5.     The above forfeiture statutes apply to a different class of property than forfeiture under 18 U.S.C § 981(a)(1)(C), because such forfeitures are not limited to proceeds of the crime. Rather, forfeiture based on these statutes allow for forfeiture of property used to facilitate the crimes described above, that is, violations of 18 U.S.C. §§ 1029, 1030, and 1956.

6.     The procedure by which the Government will seize the Target Properties is described herein and set forth in detail in Attachment B to the Warrant.

## JURISDICTION

7.     This Court has jurisdiction to issue the requested warrant because acts and omissions in furtherance of the offenses under investigation occurred within Washington, D.C. *See* 18 U.S.C. § 3237.

## STATUTORY AUTHORITY

8.     As set forth below, I respectfully submit that there is probable cause to believe that Slilpp, an online marketplace that hosts vendors dealing in stolen personal identifying information ("PII"), amongst other illicit cyber wares, has been utilized by various actors around the world to commit violations of 18 U.S.C. § 1029 (access device fraud), 18 U.S.C. § 1030 (fraud and related activity in connection with computers), and 18 U.S.C. § 1956(a)(2)(A) (international promotional money laundering).  I further submit that there is probable cause to believe that the Target Properties are subject to seizure and forfeiture pursuant to:

   a.   18 U.S.C. § 1029(c)(1)(C) as personal property used, or intended to be used, to commit access device fraud, in violation of 18 U.S.C. § 1029(a);

3

b. 18 U.S.C. §§ 1030(i)(1)(A) and (j)(1) as personal property that was used, or intended to be used, to commit or to facilitate the commission of a § 1030 violation;

c. 18 U.S.C. § 981(a)(1)(A) as personal property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(2)(A); and

d. 18 U.S.C. § 982(a)(1)(A) as personal property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(2)(A).

9. Section 1029(c)(2) further provides that the "forfeiture of property under this section, including any seizure and disposition of the property and any related administrative and judicial proceeding, shall be governed by [21 U.S.C. § 853], except for subsection (d) of that section." 18 U.S.C. § 1029(c)(2).

10. Section 1030(i)(2) also provides that forfeiture of property under the section, including any seizure and disposition of the property, and any related judicial proceeding, shall be governed by [21 U.S.C. § 853], except for subsection (d) of that section." 18 U.S.C. § 1030(i)(2).

11. Section 982(b)(1) also incorporates the procedures in 21 U.S.C. § 853 (other than subsection (d)) for all stages of a criminal forfeiture proceeding.

12. To protect the ability of the United States to exercise its right of forfeiture, 21 U.S.C. § 853(e) empowers district courts to enter restraining orders and injunctions to preserve the availability of property that is subject to forfeiture under Section 853(a). However, if there is probable cause to believe that the property to be seized is subject to forfeiture and that an order pursuant to Section 853(e) may not be sufficient to assure its availability for forfeiture, a district court may issue a warrant authorizing the seizure of such property. 21 U.S.C. § 853(f). Section 853(f) provides that:

> The Government may request the issuance of a warrant authorizing the seizure of property subject to forfeiture under this section in the same manner as provided for a search warrant.  If the court determines that there is probable cause to believe that the property to be seized would, in the event of conviction, be subject to forfeiture and that an order under subsection (e) may not be sufficient to assure the availability of the property for forfeiture, the court shall issue a warrant authorizing the seizure of such property.

13.     Section 853(l) provides that "district courts of the United States shall have jurisdiction to enter orders as provided in this section without regard to the location of any property which may be subject to forfeiture under this section. . . ."

14.     Title 18, U.S. Code, Section 981(b) states that property subject to forfeiture under Section 981, such as personal property involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(2)(A), may be seized via a civil seizure warrant issued by a judicial officer "in any district in which a forfeiture action against the property may be filed," and may be executed "in any district in which the property is found," if there is probable cause to believe the property is subject to forfeiture.

15.     This application seeks a seizure warrant under both civil and criminal authority, because the property to be seized could easily be placed beyond process if not seized by warrant, as the Target Properties exist online and could be easily removed/destroyed by the subjects of the investigation.  There is probable cause to believe that the Target Properties are subject to forfeiture because they were used to facilitate access device fraud, computer fraud, and money laundering, as well as contain evidence of those crimes.  In addition, neither a restraining order nor an injunction is sufficient to guarantee the availability of the Target Properties for forfeiture.  By seizing the Target Properties, the United States will prevent third parties from acquiring the Target Properties, as well as the information contained therein, and using them to for additional crimes.

16.     The All Writs Act provides in relevant part that "all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a).  The All Writs Act permits a court, in its "sound judgment," to issue orders necessary "to achieve the rational ends of law" and "the ends of justice entrusted to it."  *United States v. New York Telephone Co.*, 434 U.S. 159, 172-73 (1977).  The Supreme Court has further held that the All Writs Act is a "residual source of authority to issue writs that are not otherwise covered by statute." *Penn. Bureau of Corr. v. U.S. Marshals Serv.,* 474 U.S. 34, 43 (1985).  The courts have described this authority as both "broad" and "flexible." *See, e.g., N.Y. Tel. Co.*, 434 at 173; *United States v. Catoggio*, 698 F.3d 64, 67 (2d Cir. 2012).

17.     In *New York Tel. Co.*, the Supreme Court used the All Writs Act to compel a third party phone company to assist the government with the implementation of a pen register.  434 U.S. at 178.  The government seeks not only to seize the Target Properties by essentially turning off the sites, but also to redirect persons going to those sites to a government controlled site with a posted notification that the original site has been seized based on alleged violations of the above statutes and that such site is subject to forfeiture.  Allowing this redirect to a government notice page is necessary to fully effect the seizure of the domain and provide notice to victims, the defendant, and co-conspirators who might visit the Target Properties.  In order to redirect to such page, the government will provide the registrant of the site with the new government address to which the Target Properties should point.  The registrant has complied with such requests in the past, and it

poses only a nominal burden on the registrant (*i.e.*, changing code in a computer program).  This request is consistent, if not less intrusive, than the request to *New York Tel. Co.*[2]

## TECHNICAL BACKGROUND

### The Internet

18.     The internet is the global system of interconnected computer networks that allows connected computers to communicate with each other according to two basic identifiers: internet protocol ("IP") addresses and domain names (commonly referred to as web addresses).

19.     An IP address is a number that uniquely identifies internet-connected computers. When one computer interacts with a second computer over the internet, the first computer communicates its IP address to the second computer, so that each computer can communicate with the other.  The system of IP addresses is managed by the Internet Corporation For Assigned Names and Numbers ("ICANN"), together with five Regional Internet Registries (essentially, one for each populated continent except Australia, which is combined with most of Asia), including the American Registry for Internet Numbers ("ARIN"), which has responsibility for North America. ARIN registers IP addresses for internet-connected computers in North America, and maintains records about the registered owners for those IP addresses.  ARIN-registered owners are typically large users or organizations, such as remote computing or internet service providers (*e.g.*, Comcast), who can internally assign IP addresses to computers that belong to individual subscribers.

20.     A domain name is typically a unique name that corresponds to an IP address or

---

[2] The government does not concede that a seizure warrant based on forfeiture authorities alone is insufficient to cause a redirect of a seized website.  However, in the abundance of caution, the government also cites to the All Writs Act as additional authority for the instant request.

collection of IP addresses, typically the IP addresses of computers that host websites. The domain name system ("DNS") is, among other things, a hierarchical convention for domain names. Domain names are composed of parts, or "labels," that are delimited by periods, such as "example.com." The hierarchy of domains descends from right to left; each label to the left specifies a subdivision, or subdomain, of the domain on the right. The right-most label conveys the "top-level" domain. For example, the domain name "example.com" means that the computer assigned that name is in the ".com" top-level domain, the "example" second-level domain.

21.     If an individual wants to purchase (or "register") a domain name, he or she can do so through a registry, but most such individuals (or "registrants") register through "domain name registrars" that provide additional internet-based services, such as e-mail services and web hosting services. When domain names are purchased through registrars, the registrars are responsible for communicating the purchase with the relevant registry. The registrar is also responsible for creating records that can be used by DNS servers, the internet-connected computers that are responsible for converting (or "resolving") domain names into IP addresses.[3]

22.     If a registrant wants to use his or her domain name to connect to a computer (for example, to support a website), he or she must provide the IP address(es) of the relevant computer(s). The registrant may have his or her own internet-connected computer server with its own IP address. However, in many cases, registrants lease internet-connected computers from companies that provide "cloud computing" or "web hosting" services.

---

[3] When an end user wants to visit a website, that end user typically enters the domain name, or web address, into his or her web browser (*e.g.*, Google Chrome). The web browser submits that domain name to a DNS server (a server which is typically provided and designated by the end user's Internet Service Provider). The DNS server searches DNS records to identify the IP address of the computer that hosts the requested website, and provides that IP address to the end user's computer, which then uses that designated IP address to contact the computer that hosts the site.

23.     The system of IP addresses and domain names is ultimately coordinated by the ICANN.  ICANN requires participants in the system (including internet registries and domain name registrars) to maintain and, in many circumstances, to make publicly available, records identifying the registrants, or users, of the domain names and IP addresses.  The resulting records are known as WHOIS records.  WHOIS records typically indicate the listed identity of individuals or organizations that have registered IP addresses or domain names.  These WHOIS records typically include names, contact information, and address and/or location information.  The names of individual subscribers or registrants are typically unverified, but in my experience, even false names can provide useful investigative leads.  For example, when two domain names are registered using the same (even false) name, and when those domain names have other commonalities (date of registration, domain name registrar, resolving IP address), in my training and experience those two domain names are often operated by the same person or organization.  In addition, e-mail addresses for registrants are often attended – even for registrants engaged in criminal activities, and even where the e-mail addresses that do not reflect the registrants' true identities – because, even if they are concealing their identities, registrants may want to receive e-mails about their domains.

**PROBABLE CAUSE**

**The Slilpp Marketplace**

24.     The offenses under investigation involve "carding" activity, which in relevant part includes the unauthorized sale of account login credentials and other personally identifying information (or "PII") that can be used to steal money, for example through the unauthorized use of online accounts that are linked to credit cards, bank accounts, or debit cards.  The offenses under investigation include the use of criminal means to obtain account login credentials; the use of those

9

credentials to obtain account-related PII; the unlawful sale of login credentials and PII; and the use of the login credentials to gain unauthorized access to online accounts, including bank accounts and other payment accounts, in order to fraudulently obtain money and other items of value.

25.    The subjects of the investigation conduct the above-listed offenses through an online marketplace known as Slilpp.  Slilpp appears to have been operating since 2012.  Slilpp operates much like Amazon or eBay, in that it allows vendors to sell stolen login credentials, and allows customers to buy stolen login credentials, by operating a website that provides a forum and payment mechanism for the above-described transactions.  However, Slilpp is different from Amazon or eBay in that it is dedicated to illegal carding activity.

26.    The FBI has contacted numerous victims whose login credentials have been sold on Slilpp; these victims confirmed that they did not authorize the sale of their login credentials over Slilpp.  In addition, the FBI has also made undercover purchases from Slilpp, and confirmed that the login credentials that the FBI purchased had been stolen from the rightful owners.  Finally, providers of the accounts associated with those login credentials (e.g., the banks which provided online account access to their customers) confirmed that many of the login credentials had been used to gain unauthorized access to online accounts, and that many of the login credentials had been used to conduct unauthorized transactions (e.g., wire transfers) from those accounts.

27.    For example, on September 23, 2016, an undercover agent of the FBI, while located inside Washington, D.C., used a computer located in Washington, D.C., to purchase login credentials through a website operated by Slilpp.  The investigation subsequently confirmed that many of those login credentials belonged to residents of Washington, D.C.; that none of the true owners of the login credentials had provided their credentials to Slilpp; and that all of the owners had been victims of identity theft related to their login credentials.  FBI undercover agents have

since made additional purchases over Slilpp from Washington, D.C., including a May 27, 2021, purchase of the login credentials and related information for five bank accounts.

28.     Slilpp conducts transactions in the virtual currency bitcoin, with the transactions denominated in U.S. dollars.  In order to make undercover purchases from Washington, D.C., the FBI obtained an undercover account with Slilpp, deposited bitcoin into its Slilpp account, and purchased stolen login credentials using that bitcoin.   The FBI has also interviewed former Slilpp users, including former U.S. users who purchased stolen login credentials from computers located in the United States.[4]   Those former users also confirmed that they conducted their Slilpp transactions in bitcoin, and that they purchased stolen login credentials from Slilpp for an unlawful purpose – specifically, for the unlawful purpose of obtaining unauthorized access to user accounts, and then using that access to conduct financial transactions, all for the purpose of fraudulently obtaining money.  I have reviewed the transactional records concerning those purchases and found that the U.S.-based users made purchases from Slilpp sellers, including Slilpp sellers located outside the United States.

**The Slilpp Website**

29.     The Slilpp marketplace has been accessible through the open internet as well as the "dark web."[5]  Slilpp's website on the open internet has used different domain names over time, including the domain names listed in Table 1, at the approximate dates listed in Table 1.   FBI

---

[4] The former users who spoke with the FBI were defendants who had been charged in connection with their conduct on Slilpp, and who were then cooperating with the FBI.  To date, over a dozen individuals have been charged or arrested by U.S. law enforcement in connection with the Slilpp marketplace.

[5] The dark web is a segment of the internet which is not indexed by conventional search engines, which can only be accessed through anonymizing web browsers, and which can be used to obscure the true location, IP address, and identity of the participants.

undercover employees have personally accessed Slilpp through all of the domains in Table 1. These domain names were integral to the functioning of Slilpp and were necessary for the operation of the marketplace.  In addition, based on publicly available WHOIS records, I confirmed that the domains listed in Table 1 are currently maintained on property controlled by the Internet Registry or Domain Registrar listed in Table 1 for each domain.

| Table 1 | | |
|---|---|---|
| **Domain Name** | **Registry or Registrar** | **Approximate Dates Observed** |
| slilpp.org | Public Interest Registry | September 6, 2014 |
| slilpp.net | Verisign | March 12, 2015 |
| slilpp.biz | Neustar | November 23, 2016 |

30.     Slilpp is currently accessible only through the dark web, but Slilpp used the domain slilpp.top for its website on the open internet as recently as April 2021.

### The Slilpp Back-End Server

31.     In January 2016 and again in September 2016, German law enforcement officials identified and imaged the server that was hosting the Slilpp website and supporting the Slilpp marketplace – specifically, the server identified by the IP address 85.25.194.12 (the "Slilpp Server"), which is the server that is the subject of the requested search warrant.  In addition, between June 2016 and December 2016, German law enforcement obtained wiretap data from the Slilpp Server.  I have reviewed both the images as well as the wiretap data obtained by Germany.

32.     In February 2020, FBI again located the Slilpp Server, and found that the server identified by the IP address 85.25.194.12 had been continuing to function as the Slilpp Server. The provider hosting Slilpp at this time had previously been organized as a European entity, but had since been acquired and reorganized as a U.S. company.  The FBI served the U.S. company

with a search warrant for the Slilpp Server; the U.S. company responded by providing an image of the Slilpp Server in February 2020.  The U.S. company also confirmed that the Slilpp Server is and has been physically located in a data center in France.  Finally, in April 2021, pursuant to another U.S. search warrant, the U.S. company provided another image of the server identified by the IP address 85.25.194.12, and subsequent analysis of that image showed that the server continued to function as the Slilpp Server.

33.    The Slilpp Server images obtained in 2016, 2020, and 2021 included a database (the "Slilpp Database") that contained login credentials that had been offered for sale (and actually sold) through Slilpp.  It also contained a wealth of historical information about Slilpp vendors, customers and transactions, including subscriber and payment information for individual accounts that have been used to buy and sell login credentials over Slilpp.  The Slilpp Database accurately reflected known Slilpp transactions and subscriber records, including, for example, the September 23, 2016, FBI undercover purchase that is described above.  In short, the Slilpp Server contained the Slilpp Database, which contained transactional and subscriber information for all of Slilpp.

34.    Slilpp sells and has sold login credentials for hundreds of different account providers – over 1,400 different providers are listed in the 2021 copy of the Slilpp Database.  It has sold, or listed for sale, the login credentials for tens of millions of accounts.  The 2021 copy of the Slilpp Database contains over 80,000,000 sets of login credentials which have either been sold or listed for sale.

35.    In addition to working directly with individual victims as described above, I have also worked with some of the account  providers (e.g., U.S. Banks, payment providers, cellphone providers, and retailers), who have verified that the login credentials and PII in the Slilpp database actually matched the information from victim bank accounts and subscriber accounts.  In addition,

by combining information from the Slilpp database with their own business records, some victim organizations have been able to identify fraudulent transactions and loss amounts. While fewer than a dozen victim organizations – out of the total 1,400 victim organizations – have provided loss amounts to date, those victims alone have identified over $200,000,000 in losses directly connected to the fraudulent use of accounts sold or offered for sale through Slilpp.

36.     Throughout Slilpp's existence, including while accessible at each of the domains listed in Table 1, the administrators, vendors, and buyers using the marketplace engaged in transactions in which payments were made from the United States to places outside the United States for the purpose of promoting criminal activity, including obtaining and using stolen login credentials.

## CONCLUSION

37.     I submit, respectfully, that the domains names listed in Table 1, which are maintain on property controlled by the registries and registrars listed in Table 1, have been used to support the Slilpp Marketplace, including for purposes of violations of 18 U.S.C. §§ 1343 (wire fraud), 1344 (bank fraud), 1028 (identity theft), 1028A (aggravated identity theft), 1029 (access device fraud), 1030(a)(4) (obtaining unauthorized access to protected computers for the purpose of furthering fraud), and 1956(a)(2)(A) (promotional international money laundering).

38.     The attachments to the requested seizure warrants list domain names for which there is probable to believe were "used or intended to be used to commit or facilitate the commission" of violations of 18 U.S.C. §§ 1343 (wire fraud), 1344 (bank fraud), 1028 (identity theft), 1028A (aggravated identity theft), 1029 (access device fraud), 1030(a)(4) (obtaining unauthorized access to protected computers for the purpose of furthering fraud), and 1956(a)(2)(A) (promotional international money laundering).

39.     Based on the forgoing, I respectfully submit that there is probable cause to believe that the Target Properties listed in Attachment A are subject to forfeiture.

40.     I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Seizure Warrant.  I submit that staff from the United States Attorney's Office for the District of Columbia, including Assistant U.S. Attorney Demian Ahn, are capable of identifying my voice and telephone number for the Court.

41.     Upon seizure of the Target Properties, the government, like any owner of a domain, will have the ability to redirect internet traffic to servers of the owner's choosing, in this case servers operated by the government.  In order to effectuate the seizure of the Target Properties, the government will redirect any victim that would be sent to this domain name to substitute servers which will be configured to log transactional information regarding incoming communications, but which will not seek victim content, and which will not cause any victim to send content.  The substitute servers will not have access to historical data from the original server.  This aspect of the seizure is laid out in greater detail in Attachment B.  As detailed in Attachment B, upon execution of the seizure warrant, the provider controlling the Target Properties will be directed to restrain the Target Properties pending transfer of all right, title, and interest in the Target Properties to the United States upon completion of forfeiture proceedings.  This ensures that changes to the Target Properties cannot be made absent court order or, if forfeited to the United States, without prior consultation of the United States.

42.     I respectfully request, pursuant to Rules 4.1 and 41(d)(3) of the Federal Rules of Criminal Procedure, permission to communicate information to the Court by telephone in connection with this Application for a Seizure Warrant.  I submit that staff from the United States

15

Attorney's Office for the District of Columbia, including Assistant U.S. Attorney Demian Ahn, are capable of identifying my voice and telephone number for the Court.

43.     Because the warrant will be served on PROVIDER, who controls the Target Properties, and thereafter, at a time convenient to it, will transfer control of the Target Properties to the government, there exists reasonable cause to permit the execution of the requested warrant at any time in the day or night.

Respectfully submitted,

Christopher Rizzo
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me telephonically by Special Agent Christopher Rizzo per Fed. R. Crim. P. 4.1 and 41(d)(3) on this 9th day of June 2021.

HONORABLE ZIA M. FARUQUI
UNITED STATES MAGISTRATE JUDGE

16